IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Arkmael Ray Sales, | : | |
| Plaintiff | : | Civil Action 2:11-cv-00239 |
| v. | : | Judge Marbley |
| Mr. K. Smith, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

# Report and Recommendation

Plaintiff Arkmael Ray Sales, a state prisoner at the Pickaway Correctional Facility, brings this action under 42 U.S.C. § 1983 alleging that defendants violated his First and Eighth Amendment rights. This matter is before the Magistrate Judge on defendants' Kenneth Smith, Eugene M. Hammond and Leon Hill's August 1, 2012 motion for summary judgment (doc. 54) and plaintiff Arkmael Ray Sales' October 31, 2012 motion for injunctive relief (doc. 68).

## I. Allegations in the Complaint

The complaint alleges that on June 3, 2010, at approximately 2:45 p.m., plaintiff requested that he be released from his unit for his prescribed breathing treatment. Plaintiff suffers from chronic obstructive pulmonary disorder. Chemical mace had been released in his unit, and plaintiff was having difficulty breathing. Plaintiff requested to be released three times. An inmate walking by observed plaintiff and stated that it was

an emergency. Defendant Smith continued to ignore plaintiff's requests. Plaintiff told defendant Smith that he may as well write him up because plaintiff intended to file a complaint as soon as he could get the form. Defendant Smith charged the gate and threatened to put plaintiff in the hole. The gate was opened and plaintiff went to the infirmary where he received a breathing treatment. Plaintiff also required 35-40 minutes of oxygen before he returned to the unit. When he returned to his unit, plaintiff drafted a complaint concerning defendant Smith.

The complaint alleges that immediately thereafter, defendant Smith began retaliating against plaintiff by attempting to have him placed in the hole. Defendant Smith began repeated searches of plaintiff's property. When plaintiff filed a second complaint, the retaliation escalated. Plaintiff was subjected to daily searches of his property and his belongings were left scattered on the floor. Plaintiff never received a response to his first complaint. Defendant Hammond was ordered by Major Bill Blaney to respond plaintiff's second complaint. Plaintiff wrote to Major Blaney about Hammond's failure to respond. Defendant Hammond informed plaintiff that he was not going to win and that he should give up. Plaintiff asked that he respond to the complaint so that plaintiff could proceed to the next step of the grievance procedure.

On one day, defendant Smith shook plaintiff down three times within an eight hour shift. Plaintiff filed a second complaint with defendant Hammond against defendant Smith.

On October 17, 2010, plaintiff was in bed all day. He did not leave the unit until after the 4:00 count. Upon his return from his meal, plaintiff collected $20 from football winnings and locked it in his locker. He went to make a cup of coffee. While waiting for the water to heat, plaintiff was surrounded by two correctional officers. Plaintiff was subjected to a strip search.

On October 19, 2010, plaintiff received a conduct report dated October 17, 2010 charging him with a violation for having a weapon in his bed. At the Rules Infraction Board, plaintiff pleaded not guilty and requested that the security tape be produced to determine who had planted the weapon. Plaintiff also requested that finger printing and voice stress testing be conducted. Plaintiff received a 15-day solitary and local control placement with a recommendation that his security level be raised.

The complaint alleges that Inmate Hirst informed plaintiff that he had seen Smith near his bed on the day that the weapon was found there. Inmate Whipple provided plaintiff with an affidavit concerning the day that plaintiff requested release from the unit because of the spray.

Plaintiff received a folded up piece of paper from an inmate porter. The note was purportedly from correction officer Hill directed to defendant Smith concerning their plan to place a weapon in Sales' bed. On January 24, 2011, corrections officers Hammond and Dray confiscated the note.

    II.    **Arguments of the Parties**

        A.    **Defendants Smith, Hammond and Hill**

Defendants argue that plaintiff cannot show any evidence that defendants exhibited deliberate indifference to a serious medical condition. Defendants maintain that the standard is heightened when medical assistance has been administered, as it was here. Plaintiff is required to show that the treatment he received was so woefully inadequate as to amount to no treatment at all in order for a cause of action to arise. Defendants argue that there is no evidence of deliberate indifference on the part of defendant Smith. Smith let plaintiff out within five minutes to go to the infirmary. Smith suffered the direct effects of pepper spray and needed to use water to limit the effects of the spray. Sales stated that it was about ten minutes before he was permitted to go to the infirmary. Smith was not privy to Sales' medical records and had no knowledge that he had any breathing problems.

Defendants further argue that there is no evidence that Sales suffered from a serious medical condition. Sales was more than 60 feet away from the area where the pepper spray was used, although he walked toward the area of discharge a short time later. According to Sales's testimony, he walked to the infirmary, received treatment, and had no long term ill effects.

Defendants also argue that Sales cannot show that defendants engaged in retaliatory conduct. Sales' claim of retaliation against Smith rests primarily on his enforcement of prison regulations. Sales does not deny that he was discovered with illegal gambling betting slips and razor blades. Sales also admits that he was found in possession of prescription drugs that he was supposed to have taken. Sales alleges that

4

Smith's enforcement of these rules constitutes retaliation because he does not enforce violations by other inmates. Smith fully acknowledges enforcing prison rules violated by Sales, although he denies treating Sales differently than any other inmate.

With respect to his allegations against defendants Hammond and Hill, plaintiff acknowledges that he has no evidence that either of these defendants had any involvement in the search of his cell. His allegations are merely based on his suspicions.

Defendants also argue that Hammond's alleged comments cannot serve as the basis for a Section 1983 claim because words are not actionable. Captain Hammond acknowledges that the he told Sales that he had no legitimate basis for complaining when he was found with a weapon. Defendants maintain that even threats are not actionable under Section 1983.

Defendants argue that there is no evidence to support plaintiff's allegation that defendant Hammond interfered with Sales' legal action by confiscating a note. The purported note supposedly stated that the author and Captain Hammond agreed to have Sales shaken down in order to retaliate against him. Sales has no idea who wrote the note, nor does he have any proof that Captain Hammond had anything to do with taking the note.

Defendants contend that Sales has failed to exhaust his administrative remedies regarding his claim of retaliatory conduct by defendants. Defendants maintain that Sales never appealed his grievance alleging retaliatory conduct to the Chief Inspector's office, and therefore he failed to exhaust his administrative remedies.

Defendants also argue that they are entitled to qualified immunity. Defendants maintain that there is no evidence of deliberate indifference to medical needs, retaliatory conduct, or that a note was taken from his possession. Even if such constitutional rights existed based upon the facts set forth in this case, plaintiff has failed to establish that he suffered a deprivation of any clearly established statutory or constitutional rights that a reasonable office would understand to violate his rights.

### B.     Plaintiff Sales

Plaintiff states that he worked for defendant Smith for 1½ years, and that Smith was aware of his medical status. Plaintiff maintains that defendants cannot deny that plaintiff received the "Duo Neb" treatment or that he required approximately 30 minutes of oxygen once Smith finally permitted him to obtain treatment. When he returned to the B-1 unit, plaintiff wrote an informal complaint concerning Smith's conduct. Plaintiff did not receive a response to this complaint within 30 days. Plaintiff approached Major Blaney, who advised plaintiff to file a second complaint and submit it to him. In response to plaintiff's complaints, he was told that Captain Hammond would respond. When he did not have a response from him, plaintiff submitted a kite to Major Blaney indicating that Smith was continuing to retaliate against him and harass him.  Captain Hammond summoned plaintiff to his office and told him that he was not going to win and that he should give up.

Plaintiff maintains that prior to the June 3, 2010 incident, there were no conflicts between Smith and him. Once Smith learned of plaintiff's complaint, however, Smith subjected him to daily searches and withheld his mail.

Plaintiff asserts that defendants Smith, Nichols, and Hammond acted in concert to violate his civil rights because of his complaints against Smith.

Plaintiff acknowledges that prison officials have the right to shake down inmates in the interests of security. But plaintiff argues when a correctional officer subjects an inmate to continual shake downs in response to complaints filed against him, without cause, there is no penological justification for that. Plaintiff maintains that he did not have a history of possessing contraband, and the records indicate that Smith never had any issue with plaintiff's conduct until he filed his complaint on June 3, 2010.

**III.    Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

### IV. Discussion

#### A. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. Determining whether qualified immunity is appropriate is a three step inquiry. First, the Court determines whether a constitutional violation occurred. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994). Second, the Court determines whether the alleged conduct of the defendants violated a clearly established statutory or constitutional right of which a reasonable person would have been aware. *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). If the right is clearly established, the Court must determine whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what the defendant allegedly did was objectively unreasonable in light of clearly established constitutional rights." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994)

### B. Deliberate Indifference to a Serious Medical Need

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 103-04. Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "An official's failure to

9

alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Mere negligence does not constitute deliberate indifference. *See, Estelle*, 429 U.S. at 106. Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Here, the only disputed facts are the length of time that Sales was forced to wait before being released to obtain his breathing treatment and the reason for that delay. Sales alleges that he was forced to wait ten minutes before he was released and that there was no apparent reason for the delay. Defendants maintain that plaintiff only had to wait for five minutes before he was released and that the reason for the delay was that Correction Officer Smith had to tend to his own needs based on his exposure to the pepper spray.

"[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001)(quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). Verifying medical evidence provides the court with the best available evidence as to whether the alleged deprivation is sufficiently serious and whether the inmate was at substantial risk of harm. *Id.* "Where a prisoner has received some medical attention and the dispute is

10

over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments." *Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). The burden of proof in such cases is fairly substantial, in that an inmate complaining about his course of treatment, such as receiving one medication instead of another, must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

Plaintiff has not provided any verifying medical evidence to establish the detrimental effect of the delay of an additional five minutes caused him. Plaintiff's subjective complaints are simply not sufficient and do not constitute verifying medical evidence.

### C. Retaliation

A claim for a First Amendment retaliation has three elements: the plaintiff engaged in protected conduct, the defendant took an adverse action against the plaintiff, and this adverse action was taken because of the protected conduct. *Thaddeus-X, et. al. v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Sales easily satisfies the first element because a prisoner has a constitutional right to file grievances against prison officials. *Smith v. Campbell*, 250 F.3d 1032, 1037 (2001) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

The second element of a First Amendment retaliation claim is a showing that an adverse action was taken. *Thaddeus-X*, 175 F.3d at 396. In order to determine whether

11

actions of lesser severity merit being deemed "adverse" for purposes of a retaliation claim, we adopt the standard suggested by Judge Posner in *Bart v. Telford*, 677 F. 2d 622, 625 (7th Cir. 1982), that an adverse action is one that would "deter a person of ordinary firmness" from the exercise of the right at stake. *Thaddeus-X*, 175 F.3d at 396. For the third element, "the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399. Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Id.*" *Smith, Jr. v. Campbell*, 250 F.3d 1032, 1038 (2001).

Plaintiff has not shown that defendant Smith took an adverse action against him. Rather, plaintiff alleges that Smith simply enforced prison rules against him. Although plaintiff maintains that defendant Smith enforced rules against him that he did not enforce against other inmates, plaintiff fails to cite to any case law supporting his claim that selective enforcement of prison rules is actionable. Sales also fails to provide any evidence to support his allegations of selective enforcement.

With respect to his claims against defendants Hammond and Hill, plaintiff fails to provide any evidence indicating their involvement with the search of his cell. His allegations are based on an unsigned note that was provided to plaintiff. The purported note, which plaintiff maintains was later confiscated, detailed a conspiracy to have Sales locked up. Sales acknowledges, however, that he does not know who wrote the note or

who confiscated it. Sales also acknowledges that he has no evidence supporting his belief that defendants Smith and Hammond planted a weapon in his bed.

Finally, defendant Hammond's alleged comments to Sales are not actionable under Section 1983. "The threat to do harm in order to interfere with plaintiff's constitutional rights does not in itself give rise to a constitutional violation." *Washington v. Webster*, 883 F.2d 76, 1989 WL 91653, at *2 (6th Cir. 1989) (citing *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir.1987)).

## V. Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendants' Kenneth Smith, Eugene M. Hammond and Leon Hill's August 1, 2012 motion for summary judgment (doc. 54) be GRANTED.

## VI. Plaintiff's motion for injunctive relief

Plaintiff Sales alleges that a threatening note was mailed to his sister. During an investigation, Sales made a photo identification of those responsible for the threats and signed a statement against them. He was placed in Security Control on September 5, 2012. He was advised to ask for protective custody. Five days later, plaintiff signed a paper asking to be transferred to the Hocking Correctional Institution. However, he continues to be held in Security Control.

These allegations do not involve this lawsuit. They provide no basis for injunctive relief here. Further, a prisoner has no right to be transferred to a particular prison. *See, Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Montayne v. Haymes,* 472 U.S.

13

236, 242-43 (1976); *Meachum v. Fano,* 427 U.S. 215, 224-25 (1976); *Ward v. Dyke,* 58 F.3d 271, 275 (6th Cir. 1995). Moreover, plaintiff has made no factual allegations that would support a finding that the conditions of confinement in Security Control "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Accordingly, it is RECOMMENDED that plaintiff Sales' October 31, 2012 motion for injunctive relief be DENIED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/ Mark R. Abel
United States Magistrate Judge
